IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil No. 3:18-cv-00152-RJC

| | |
|---|---|
| CLYDE B. MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 7, 9), and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Clyde B. Morris ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of his social security claim. Plaintiff filed an application for Disability Insurance under Title II of the Social Security Act ("SSA") on September 26, 2013, alleging a disability onset date of September 14, 2013. (Doc. Nos. 5 to 5-1: Administrative Record ("Tr.") at 311). His application was denied first on November 6, 2013, (Tr. 475), and upon reconsideration on December 13, 2013. (Tr.

1

484). Plaintiff filed a timely request for a hearing on February 10, 2014, (Tr. 488), and an administrative hearing was held by an administrative law judge ("ALJ") on December 10, 2015. (Tr. 338–72).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 447–64). On February 15, 2017, the Appeals Council issued a decision vacating this decision and ordering remand for further proceedings. On remand, the ALJ held a second hearing on July 20, 2017 (Tr. 373–414) and found that Plaintiff was not disabled on October 3, 2017. (Tr. 311–30). Plaintiff requested a review of the ALJ's decision, but on January 25, 2018, the Appeals Council denied Plaintiff's request for a review. (Tr. 1). After having exhausted his administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of his social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i) and 223(d) of the SSA. (Tr. 314). To establish entitlement to benefits, Plaintiff has the burden of proving that he is disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that his disability began on

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

September 14, 2013 due to a combination of physical and mental impairments.

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 330). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 330).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that he suffered from severe physical and mental

3

impairments,[2] and that his impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 316–19). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff

> has the [RFC] to perform medium work . . . except . . . [he] is able to stay on-task for two hours at a time throughout the workday, and so is limited to jobs performing the simple, routine, repetitive tasks of unskilled work, performed at a non-production work rate, in an environment without requirements for constant changes in routine, complex decision-making, or for dealing with crisis situations; the claimant is restricted from jobs requiring interaction with the general public, and is limited to jobs requiring only occasional interaction with co-workers and supervisors.

(Tr. 321–22). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which he had previously been employed. (Tr. 329). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in his RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 329–30). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three jobs that exist in significant

---

[2] The severe impairments the ALJ determined Plaintiff suffered from were hypertension, obesity, anxiety, bipolar disorder, depression, alcohol abuse, and long-term benzodiazepine use. (Tr. 317).

4

numbers in the national economy: "laundry laborer,"[3] "kitchen helper,"[4] and "counter supply worker."[5] (Tr. 330). According to the DOT, these jobs each have a Reasoning Level of 2. (Tr. 330). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent him from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 330).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to

---

[3] DOT 361.685-018, 1991 WL 672987 (listed as "Laundry Worker II" in the DOT).
[4] DOT 318.687-010, 1991 WL 672755.
[5] DOT 319.687-010, 1991 WL 672772.

5

any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff alleges that the ALJ erred by (1) improperly giving less than controlling weight to the opinions of Plaintiff's treating physicians without providing supporting evidence for doing so and (2) failing to explain how he found that Plaintiff is able to perform tasks for two hours at a time in his RFC assessment. The Court finds these arguments meritless and addresses each allegation of error in turn.

### A. The ALJ provided sufficient evidence for giving the treating physicians opinions "some to little" weight

Plaintiff argues that the ALJ discredited the opinions of Doctors Anderson and Rosado, Plaintiff's treating physicians, without providing substantial evidence for doing so. The Court disagrees that the ALJ's opinion regarding the doctors' testimony "lacks the specific analysis that would allow for meaningful review." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

ALJs must afford treating sources controlling weight if they "find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under Social Security Ruling 96–2p an ALJ must "give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). Specifically,

7

the "notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id.

If an ALJ is to discount an opinion, he must provide a clear explanation for doing so and "build an accurate and logical bridge from the evidence to his conclusion" that the testimony was not credible. Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). The Fourth Circuit has held that "'[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" Id. (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

Here, the Court finds that the ALJ described with sufficient particularity his basis for giving less than controlling weight to the testimony of Plaintiff's treating physicians. The ALJ provided several specific reasons for allotting "some to little weight" to the opinions submitted by Drs. Anderson and Rosado, all related to apparent inconsistencies between the record evidence and the opinions of the treating physicians. (Tr. 326–28). First, the ALJ found that the opinions submitted by Drs. Rosado and Anderson show "a more positive assessment of [Plaintiff's] functioning" than do the treatment notes in the record. (Tr. 326). Specifically, in one example, the

8

ALJ contrasts the 2015 letter submitted by Dr. Rosado (Tr. 326–26; Ex 18F (describing Plaintiff as "completely disabled for any type of employment")), with treatment notes from 2015 that "indicate the [Plaintiff's] memory and concentration are improved, and cite little evidence of difficulties with memory or concentrating," (Tr. 321). Second, the ALJ reasoned that the third-party report submitted by Plaintiff's friend, Ms. Tyson, indicates that Plaintiff has a higher level of social functioning and capacity for daily activity than attested to in the doctor's opinions. (Tr. 320-21). Third, the ALJ notes that the record shows that when Plaintiff is medically compliant, his functioning improves (Tr. 325 (pointing to treatment notes that "reveal that [Plaintiff] has continued to report having generally good results from his prescribed medications")). "If a symptom can reasonably be controlled by medication or treatment, it is not disabling" under the SSA. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Although Plaintiff claims that he is totally disabled, evidence shows that these disabling conditions can be properly treated when Plaintiff is medically compliant. Thus, the ALJ found testimony characterizing Plaintiff as completely disabled inconsistent with record evidence documenting that his conditions can be treated. Therefore, the Court finds no error with the ALJ's determination to assign less than controlling weight to the testimony of Doctors Anderson and Rosado.[6]

---

[6] Plaintiff argues that the ALJ improperly criticized Plaintiff's treatment plan. The Court agrees that, as neither a medical expert nor a physician, the ALJ was not

9

Finally, the Court notes that it was not improper for the ALJ to assign different levels of weight to the doctor's testimony. Plaintiff alleges that the ALJ committed error when he gave "some" weight to the doctor's written treatment notes and "little" weight to their testimony. (Tr. 326–28). The ALJ explained that he found the descriptions of Plaintiff's condition in the treatment notes more consistent with record evidence than the opinions submitted by the treating physicians, and therefore he afforded more weight to the written treatment notes. In sum, the ALJ gave sound reasons for not apportioning controlling weight to the opinions of Drs. Rosado and Anderson, and thus, he committed no reversible error on this ground.

### B. The ALJ formed a logical bridge between the record and Plaintiff's limitation to simple, routine, repetitive tasks for two-hour segments.

Plaintiff argues that the ALJ failed to form a logical bridge from the evidence to his RFC conclusion that Plaintiff could do simple, routine, repetitive tasks for two-hour segments. Specifically, Plaintiff argues that the ALJ merely made a conclusory statement that Plaintiff could sustain attention for two hours at a time without any explanation of what evidence was used to reach this conclusion.

Citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff claims that the ALJ did not explain how this two-hour limitation was reached. Plaintiff is correct

---

qualified to pontificate on the "wisest plan for the claimant's treatment." (Tr. 327). Nevertheless, the Court finds this error harmless: the ALJ's disagreement with the doctors' treatment plan for Plaintiff was not the sole reason for giving less than controlling weight to the opinions of Drs. Rosado and Anderson, and thus, by itself, does not necessitate remand.

10

that Mascio states that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at 636 (quoting SSR 96-8p). However, Plaintiff fails to recognize that Mascio rejected a per se rule requiring remand if the ALJ fails to perform an explicit function-by-function analysis. Id. A more accurate description of Mascio's holding is

> when an ALJ finds moderate limitation in CPP,[7] the ALJ must *either* adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) *or* explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task."

Grant v. Colvin, No. 1:15-CV-00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016).

Here, at Step Three, the ALJ found that Plaintiff has moderate difficulties in CPP: "With regard to concentrating, persisting, or maintaining pace, [Plaintiff] has a moderate limitation." (Tr. 320). The ALJ cites Plaintiff's adult function report which reflects difficulty "maintaining concentration and following directions." (Tr. 320). The ALJ also supports this finding with impairment questionnaires completed by Drs. Anderson and Rosado (expressing "moderate to marked restrictions" in Plaintiff's ability to concentrate and trouble with memory) and the third-party function report

---

[7] "CPP" stands for concentration, persistence, or pace.

11

submitted by Plaintiff's friend, Ms. Tyson. (Tr. 320 (stating that Plaintiff "forgets things" and shows a "lack of focus")).

The Court finds that a two-hour limitation addressed Plaintiff's moderate limitations in CPP. This is consistent with other courts' conclusions.[8] Because the ALJ's limitation of two-hour work segments addressed the moderate CPP limitations, the Court does not find reversible error in the ALJ's failure to address Plaintiff's ability to interact appropriately with supervisors during the course of a full workday. Further, the ALJ provided several reasons for finding that Plaintiff can work in two-hour segments. The ALJ considered (1) treatment notes from Drs. Anderson and Rosado, (Tr. 326–28); (2) third-party testimony, (Tr. 320–21); (3) Plaintiff's own

---

[8] Neyer v. Comm'r, SSA, No. SAG-14-3343, 2015 WL 5773239, at *2, 2015 U.S. Dist. LEXIS 131031, at *9 (D. Md. Sep. 29, 2015) ("Based on the parameters of Mascio, 780 F.3d 632, I find that the ALJ adequately accounted for [the claimant's] moderate limitation in concentration, persistence, or pace by limiting her to performing simple tasks in two-hour increments. By limiting the sustained duration of Ms. Neyer's work to two hours, the ALJ adequately accounted for her limited ability to stay on task."); Owens v. Comm'r, SSA, No. SAG-14-3692, 2015 WL 5052688, at *4, 2015 U.S. Dist. LEXIS 112107, at *11–12 (D. Md. Aug. 24, 2015) ("I find that the inclusion of these limitations adequately distinguishes this case from [Mascio], because Mr. Owens's moderate difficulties in concentration, persistence, or pace were specifically addressed by the finding that he is able to perform simple tasks in two hour increments. Thus, the hypothetical was not wanting for limitations to address Mr. Owens's ability to maintain focus or stay on task."). But see Steele v. Comm'r, Soc. Sec., No. MJG-15-1725, 2016 WL 1427014, at *4, 2016 U.S. Dist. LEXIS 48744, at *13 (D. Md. Apr. 11, 2016) ("The Fourth Circuit was clear that restriction to simple, routine, and repetitive tasks does not adequately address a claimant's ability to stay on task. Mascio, 780 F.3d at 638. While the ALJ also includes a limitation to performing tasks in two hour increments, this limitation does not account for any breaks in addition to those encompassed by a normal workday.").

testimony about his daily activities, (Tr. 325); and (4) the recommendations and findings of State agency psychological associates, (Tr. 328). The ALJ also pointed to Plaintiff's ability to maintain social connection and romantic relationships. (Tr. 326). Therefore, although Plaintiff might disagree with the weight the ALJ gave to certain evidence in the record, the ALJ did not rely on a single piece of evidence in isolation. Rather, the ALJ built a narrative from the record that supported his conclusion that Plaintiff is capable of performing work consistent with the RFC.

The Court recognizes that even with the improvements in memory and concentration that the ALJ relied upon, Plaintiff's mental state may continue to be erratic. However, the ALJ accounted for Plaintiff's potential erraticism when assessing the RFC and in finding that Plaintiff could not perform past relevant work. (Tr. 329). The ALJ determined that even in light of treatment notes that describe Plaintiff's erratic state, Plaintiff is still capable of performing the work required for "medium" unskilled occupations. (Tr. 321). Thus, the Court finds that the ALJ accounted for this potential limitation in the RFC.

In sum, the ALJ constructed a logical bridge between the record evidence and his RFC determination. Accordingly, the ALJ sufficiently "[s]how[ed] [his] work" so that this Court could conduct a meaningful review of the ALJ's decision, Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017), and therefore, the Court finds that substantial evidence supports the ALJ's decision.

IV. CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 7), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED;** and

3. The Clerk of Court is directed to close this case.

Signed: August 6, 2019

*[Signature]*

Robert J. Conrad, Jr.
United States District Judge